Argued January 6, affirmed January 27, 1971

ALBINO ET AL, *Appellants, v.* PACIFIC FIRST
FEDERAL SAVINGS AND LOAN ASSOCIATION
ET AL, *Defendants,* and FISH ET AL, *Respondents.*

479 P2d 760

*Jack A. Gardner,* Eugene, argued the cause for
appellants. With him on the brief were Jaqua, Wheat-
ley & Gardner, Eugene.

*H. Thomas Evans*, Eugene, argued the cause for respondents. On the brief were Barber & Evans, Eugene.

TONGUE, J.

This is a suit in which plaintiffs seek a declaratory judgment that building restrictions in deeds to all lots in a residential subdivision in Eugene do not prohibit the construction of "multiple family or apartment housing" on two of such lots. Plaintiffs, who proposed the construction of so-called "garden court" apartments on these lots, appeal from an adverse judgment.

Two contentions are made by plaintiffs: (1) That a deed restriction prohibiting all buildings except "a private dwelling house" does not prohibit the construction of "multiple family or apartment housing"; and (2) That due to a "substantial and radical change in the character of the area," such restrictions are no longer enforceable to prohibit the construction of "multiple family or apartment housing" on such lots.

In support of the contention that construction of "multiple family or apartment" housing is not prohibited by deed restrictions prohibiting all buildings except "a private dwelling house," plaintiffs concede that the authorities are in conflict. Plaintiffs contend, however, that the better rule is as stated in *Leverich v. Roy*, 338 Ill App 248, 87 NE2d 226, 228-9 (1949). In that case it was held that the words "one dwelling house" did not prohibit a "house" from being occupied by two families "living separate and apart from each other."

■ On the contrary, in *Schmitt v. Culhane*, 223 Or 130, 134, 354 P2d 75 (1960), we held that restrictions providing that "not more than one dwelling may be erected on a single tract of land conveyed" prohibits the construction of "multiple dwellings." Although the terms of the deed restrictions in this case are not identical, we believe that the intent and effect of such terms is the same. Thus, we hold that a deed restriction providing that no building shall be erected except "a private dwelling house" prohibits the construction of "multiple family or apartment housing," including "garden court" apartments, as proposed in this case. See also *Taylor v. Lambert*, 279 Pa 514, 124 A 169 (1924), involving a restriction prohibiting buildings other than "a private dwelling house."

In support of the contention that the deed restrictions are no longer enforceable to prohibit "multiple family or apartment housing" because of a "substantial and radical change in the area justifying removal of said restrictions," plaintiffs offered testimony that since the sale of lots in Alpha Place Addition began in 1940 there has been an "enormous increase" in traffic on Willamette Street, adjacent to the addition; that apartments and business offices have been built along that street in the immediate area of the addition; that what was formerly a high school ball park across Willamette Street from the addition has been developed into a Civic Stadium for professional baseball, with a large "planned unit development" adjacent to the stadium, and that in recognition of these developments the zoning classification for lots fronting on Willamette Street in that area, including seven lots in Alpha Addition, has been changed from R-1 (single family residential) to R-G3 (garden apartments).

Plaintiffs also offered testimony that although the two lots in question, also fronting on Willamette Street, were originally purchased by plaintiff Albino with the intent of building a home, he then purchased a home elsewhere, and since 1955 had attempted to sell the two lots; that he had been unable to sell them for residential purposes; that the only offers for the purchase of the lots had been for the construction of apartments, conditioned upon the removal of the restrictions; that if the restrictions were removed plaintiffs Weaver would purchase the lots and build "garden apartments," to include eight living units; that the constructions of "garden apartments" on these lots was considered by planning experts to be an appropriate "transitional use" or "buffer" between Willamette Street, including the activity along that street, and the R-1 residential property to the west of that street, but not fronting on it, and would benefit the remaining lots in Alpha Addition, rather than harm them. Plaintiffs also contended that homes fronting on Willamette Street in that area had "deteriorated," with a shift from owner-occupied dwellings to rental use; that the existing restrictions were no longer of any substantial benefit to the 24 remaining lots in Alpha Addition or to the individual owners of such lots, and that unless the restrictions are removed plaintiffs will be "unable to use the property for any beneficial purpose," so as to "confiscate" plaintiffs' property.

In opposition to this testimony and these contentions defendants testified that despite changes in the area along Willamette Street, Alpha Addition itself, including the homes in that subdivision, had not deteriorated, but had remained substantially the same during the past 25 years, except for the addition of

a few new homes, as a "very nice residential area" of well-maintained homes; and that the increase in traffic noise and the lights and noise from Civic Stadium had not been serious annoyances.

Most of the individual defendants, as well as a realtor, also testified that, in their opinions, the removal of the building restrictions on plaintiffs' two lots and the construction of even "garden apartments" on those lots would decrease the value of the remaining lots in the subdivision. The individual owners most concerned were those adjacent to plaintiffs' lots and those adjacent to an alleyway which provided access to the rear of seven lots fronting on Willamette Street (including plaintiffs' two lots). The concern of the owners of the lots fronting on Willamette Street was due in part to the location of such lots on a bank above the street and banning of parking on that street. As a result, the principal access to these lots was by an alley running parallel to Willamette Street. That alley also provided access to the rear of eight lots to the west of that alley, although fronting on another street.

The owners of all of these lots expressed concern that the construction of even eight apartment units on plaintiffs' two lots, as proposed for the "garden court" apartments, would substantially increase traffic through that somewhat narrow and partially improved alleyway and would also result in a substantial increase in noise, to the annoyance of nearby private home owners. Thus, defendants offered testimony that the construction of apartments on plaintiffs' two lots would cause a decrease in the value of the adjacent lots and that this, in turn, would adversely affect the value of lots adjacent to them, so as to also result in a substantial decrease in values

of other lots in the subdivision. Conversely, defendants also offered testimony that the existing building restrictions were still of benefit to owners of property in Alpha Place Addition.

In addition, defendants realtor witness also testified that, in his opinion, plaintiffs' lots could still be sold for residential use, depending on the price. It is thus of interest to note that plaintiffs' testimony was somewhat vague as to the price at which the lots had been offered for sale during the entire period of ownership by plaintiff Albino. Apparently, however, plaintiff Albino expected to recover the price originally paid by him, plus taxes paid by him since then. Thus, the price at which he eventually sold the lots to plaintiff Weaver, subject to removal of the building restrictions, was double the original purchase price, "plus you pick up * * * four or five years back taxes." Plaintiff Weaver, a realtor and apartment house operator, also had no detailed plans or specifications for the projected "garden apartments."

After considering the evidence and briefs offered by both plaintiffs and defendants, the trial court held that plaintiffs had failed to sustain the allegations of their complaint by a preponderance of the evidence and that the deed restrictions were still valid and binding and prohibited plaintiffs from erecting multiple family housing on plaintiffs' lots. After reading the entire record, we agree with that decision.

■ Where the contention is made, as in this case, that such restrictive covenants are no longer binding and enforceable because of a "radical change" in the character of the neighborhood and because enforcement would be "oppressive," it is well established in Oregon that a court of equity will not refuse to enforce

such restrictions unless the effect of the change upon the restricted area is such as to "clearly neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant." *Ludgate v. Somerville*, 121 Or 643, 651, 256 P 1043 (1927), quoted with approval in *Blair v. Edwards Realty Co.*, 241 Or 257, 260, 405 P2d 538 (1965). As also held in *Ludgate*, and approved in *Blair*, it is not sufficient that there have been changes outside the restricted area, unless there have also been changes in the area itself, nor is it sufficient that, as a result of changes outside the area, the property within a restricted residential area may be more valuable for business purposes.

To the same effect, as held by this court in *Crawford v. Senosky*, 128 Or 229, 235, 274 P 306 (1929), also approved in *Blair* at p 261, the test is whether, notwithstanding such changes, the restriction covenant is "still of substantial value to a dominant estate." See also 4 ALR2d 1111, 1160, and 5 Restatement of the Law, Property § 564.

In applying these established rules in *Blair*, this court went on to hold, at p 261:

"* * * If defendant's lot and others adjacent to the highway are permitted business uses, plaintiffs' residences are that much closer to commercial encroachment. For that reason plaintiffs are deprived of some of the benefit of the restriction upon which they relied when they purchased their properties. If the restriction is not enforced, their first line of defense will have fallen. The erosion will have commenced and there will, in turn, be grounds for removing the restrictions from all adjacent properties."

Thus, this court held in *Blair* that the restrictive covenant in that case was still of substantial value

to the properties subject in the restricted area, with the result that it was held to be valid and enforceable. For the same reasons, we hold that the deed restrictions in this case are valid and enforceable.

Plaintiffs contend, however, that under the rule of *Blair* it is necessary to find that the restrictive covenant is still of substantial value to the *property* intended to be benefited, despite the changed use of land in the vicinity, and that benefit to the *owners* of such property is not sufficient.[1]

We do not so construe *Blair*, in which this court, at pp 260-1, expressly quoted with approval from its previous decision in *Ludgate* (in which plaintiff brought suit to enjoin violation of deed restrictions by defendant) that:

> "* * * We are not prepared to say, in view of the evidence, that the maintenance of this part of Laurelhurst as a residential district is of no substantial benefit to plaintiff. It is true that it might be more valuable for business purposes, but there are some things in this strenuous age of commercialism that count more than cash. It is her home."

In any event, there was ample evidence in this case that removal of the building restrictions on plaintiffs' lots, so as to permit the construction of "garden apartments" on those lots, would have adversely affected the value of other lots in Alpha Addition. Conversely, it follows that there was sufficient evidence

---

[1] Plaintiffs also offered evidence that on one of the adjacent lots there was an apartment over the garage, in addition to a house, and that plaintiffs' vacant lots had been used by some of the neighbors for the dumping of clippings and for other similar purposes. It appears, however, that the garage apartment was used by a member of the family of the owner of the lot and no contention is made by plaintiffs that the building restrictions had been waived by defendants.

in this case to support the finding and conclusion that the maintenance of such restrictions upon the property in Alpha Addition was still of substantial value to other property in that addition as of the date of the trial in this case, as well as to the owners of such property.

Affirmed.