Argued and submitted April 6, affirmed on appeal and cross-appeal
November 10, 2004

REALVEST CORPORATION,
a Washington corporation;
Property Management Services, Inc.,
a Washington corporation;
Village Inn Springfield, LLC,
an Oregon limited liability company;
and Village Inn Apartments, LLC,
an Oregon limited liability company,
*Appellants - Cross-Respondents,*

*v.*

LANE COUNTY, OREGON,
a political subdivision of the State of Oregon,
*Respondent - Cross-Appellant,*
*and*

John SOOY
and Mary Sooy,
husband and wife,
*Intervenors-Respondents - Cross-Appellants.*

16-01-13668; A120455

100 P3d 1109

Wm. Randolph Turnbow argued the cause for appellants - cross-respondents. With him on the briefs was Hershner, Hunter, Andrews, Neill & Smith, LLP.

Marc H. Kardell argued the cause for respondent - cross-appellant. Joining him on the briefs were Connie L. Speck, Rohn M. Roberts, and Arnold, Gallagher, Saydack, Percell, Roberts & Potter, P. C.

Rohn M. Roberts argued the cause for intervenors-respondents - cross-appellants.

Before Edmonds, Presiding Judge, and Armstrong and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiffs appeal and defendants, Lane County and its lessees, cross-appeal from the trial court's judgment in this declaratory judgment proceeding. ORS 28.010-28.160. The trial court rendered a judgment for defendants, declaring that a deed restriction is not enforceable against the county's property. Also, the trial court held that plaintiffs' use of a driveway across the county's property was subject to an implied dedication for public use, and it therefore refused to enjoin plaintiffs' existing use. We review *de novo*, ORS 19.415(3) (2001).[1] We affirm on both appeal and cross-appeal.

The dispute in this case involves land that is adjacent to the intersection of Marcola Road and Mohawk Boulevard, which is now part of the urban area of Lane County. For the purposes of this opinion, we will refer to the land in dispute as Tax Lot 500. If the intersection of the two streets is understood as forming quadrants, the county's land lies in the southeastern quadrant in its most northwesterly portion. Plaintiffs' land adjoins the county's land to the south and the east. The map found in the Appendix, taken from an exhibit in the record and enhanced with identifying markers, illustrates the parcels at issue.

In 1946, Morris and the Chases, the joint owners of Tax Lot 500 and the abutting land to the south and east, sold to Lane County: "All that portion of an 80 foot right-of-way" located at the northwest corner of the Chases' property. We

---

[1] The legislature amended ORS 19.415(3) in 2003. Or Laws 2003, ch 576, § 88 ("Upon an appeal from a [*decree*] **judgment** in a **case that constituted a** suit in equity **under common law**, the Court of Appeals shall try the cause anew upon the record." (Additions in boldface; deletion italicized in brackets.)). We need not decide whether the 2003 amendments to ORS 19.415(3) affect our standard of review because these amendments apply to the appeal of judgments that were entered on or after January 1, 2004. *See* Or Laws 2003, ch 576, § 90a ("The amendments to ORS * * * 19.415 * * * by sections 85 to 89 of this 2003 Act apply only to the appeal of judgments entered on or after the effective date of this 2003 Act. Any appeal of a judgment entered before the effective date of this 2003 Act shall continue to be governed by the law in effect on the day immediately preceding the effective date of this 2003 Act."). Based on the plain meaning of the text of Oregon Laws 2003, chapter 576, section 90a, we apply the 2001 version of ORS 19.415(3) in this case. *But see Kunze and Kunze*, 337 Or 122, 124, 92 P3d 100 (2004) (apparently citing the current version of ORS 19.415(3) in addressing a domestic relations judgment that was entered before January 1, 2004).

will refer to that land as the "1946 right of way." In 1951, the Chases, who had previously acquired Morris's interest, sold property to the Hendersons on both sides of the 1946 right of way, excepting what was sold from the part of Tax Lot 500 that had been sold previously to the county. That meant that the right of way intersected Henderson's property, roughly in the middle of the northwest portion of it. For some years thereafter, the Hendersons resided on the property that they had purchased from Chase.[2]

In 1952, an event crucial to the resolution of this case occurred. The Hendersons conveyed by deed to Lane County a portion of Tax Lot 500 that described property on both sides of the 1946 right of way. After describing the land conveyed, the deed provides:

> "Except that tract of land conveyed to Lane County for road purposes, described in Volume 32, Page 601, Lane County, Oregon, Deed Records, and excepting right-of-way of Mohawk County Road.
>
> "Land conveyed by this deed is .9 Acres, which is hereby made subject to the restriction that no building shall ever be erected thereon."

We will refer to that conveyance in this opinion as the "1952 conveyance." According to the record, in later years, when Mr. Henderson discussed the purpose of the restriction in the deed to the county, he explained that, because he lived on the property, "he didn't want a building next to him."[3]

As the years passed, the surrounding area became urban in nature rather than rural. Plaintiffs or their predecessors in interest constructed a 110-unit apartment complex, a 66-room motel, and a restaurant on the property that is immediately adjacent to the property owned by the county on Tax Lots 701 and 702. In 1971, the county relocated

---

[2] Henderson's son testified that the area around the property was "[v]ery rural" with small farms. Hendersons raised cattle and chickens on the property.

[3] Plaintiffs argue that the subjective intent of the original owner is irrelevant and that courts should consider only the objective intent taken from the language in the conveyance. Henderson's son was asked at trial, "And during the course of that conversation, did your father discuss with Realvest people what the purpose of the restriction was?" The son replied, "Well, at the time he lived there and he didn't want a building next to him." Plaintiffs did not object to that testimony at trial.

Marcola Road. By 1972, additional motel units were added and apartments built on property to the east and southeast on Tax Lot 700.[4] In 1972, a second event crucial to the resolution of this case occurred. The Lane County Board of Commissioners vacated the 1946 right of way. It also vacated a portion of the roadway that the county had constructed and that was on a portion of the land conveyed to the county by the Hendersons in 1952 because those areas were no longer being used as part of the existing roadway.

In November 2000, and after Mr. Henderson died, his wife and his heirs sold all the remaining land they owned in Tax Lot 500 to RealVest, one of the plaintiffs. Presently, the property to the north and west of Tax Lot 500 across the roadways includes a convenience store, pizza parlor, and a neighborhood market place with a large grocery store, a fast food restaurant, and several smaller stores. All of the property immediately surrounding Tax Lot 500 is zoned commercial. Mohawk Boulevard, also known as 19th Street, is a two-way, four-lane arterial with a center turn lane, curbs, gutters, and sidewalks. Likewise, Marcola Road is now a two-way, two-lane arterial with a center turn lane, curbs, gutters, and sidewalks.

Those facts frame the present dispute between the parties. In their complaint, plaintiffs seek a declaration that all of the county's property is subject to the restriction against building contained in the 1952 conveyance and that, as successors in interest to Hendersons, they are entitled to enforce the restriction against the county. With knowledge of a dispute over the enforcement of the building restriction, Sooys entered into a lease with the county for the county's remaining property in Tax Lot 500. Sooys intervened in the trial court proceedings, and they participate in this appeal as respondents and cross-appellants. The county and Sooys contend that the restriction is no longer enforceable. In addition, the county seeks to enjoin plaintiffs from trespassing on their property by the use of the driveway that leads from plaintiffs' apartment across the county's property to Marcola Road.

---

[4] Plaintiffs are the present owners of Tax Lots 700, 701, and 702.

The trial court made findings of facts and reached the following conclusions of law:

"1. The effect of the change upon the restricted Lane County property is such as to clearly neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant.

"2. The restrictive covenant is of no substantial value to Plaintiffs' property.

"3. Enforcement of the restrictive covenant would be inequitable, unjust and a useless burden upon Lane County and Lessors.

"4. Plaintiffs are presently using portions of the Lane County property for a driveway without Lane County or Lessor's explicit authorization and consent. However, since the evidence establishes an implied dedication of the driveway to public use, Plaintiffs should not be enjoined from continuing use of the subject driveway without the County formally vacating the implied easement created by that public use."

The trial court denied "as moot" plaintiffs' request for a judgment declaring that the disputed county property is subject to a deed restriction enforceable by plaintiffs. It declared that the restriction in the 1952 deed was not enforceable against the property that Lane County obtained in that deed. It also declared that judgment be entered in favor of plaintiffs and against defendants on defendants' trespass claim.

On appeal, plaintiffs make two assignments of error: (1) "[t]he trial court erred in holding that the deed restriction no longer provides any value to RealVest Property"; and (2) "[t]he trial court erred in failing to rule on Plaintiffs' claim for relief and to hold that the deed restriction encumbers all of [Tax Lot] 500, including the '80 foot right of way.' " We consider both assignments together because they are interrelated. The starting point in our analysis concerns the ownership of the various portions of Tax Lot 500. Two questions need to be answered before addressing the present import of the 1952, deed restriction on building: What interest in land was conveyed to Lane County in 1946 and 1952 and who owns the land vacated by Lane County in 1972?

■    Our goal in interpreting a writing, including a deed conveying property, is to determine the parties' intent. *See Tipperman v. Tsiatsos*, 327 Or 539, 544-45, 964 P2d 1015 (1998) (construing an instrument that created an interest in land); *Yogman v. Parrott*, 325 Or 358, 361, 937 P2d 1019 (1997) (construing a contract). We do that by looking first to the language of the instrument itself and considering its text in the context of the document as a whole. If the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law. *Yogman*, 325 Or at 361. If a provision is ambiguous—that is, if it has no definite meaning or is capable of more than one reasonable interpretation—we will examine relevant surrounding circumstances or extrinsic evidence of the contracting parties' intent. *Tipperman*, 327 Or at 544-45; *Yogman*, 325 Or at 363-64. Finally, if an ambiguity remains, we may resolve the contract's meaning by resort to applicable maxims of construction. *Yogman*, 325 Or at 364-65.

■    With the above principles in mind, we turn to the terms of the 1946 deed. For the listed consideration of one dollar, the 1946 warranty deed from Morris and the Chases "does hereby grant, bargain, sell and convey" to Lane County "all the following real property * * * described as follows, to wit: *All that portion* of an 80 foot right-of-way * * *. To Have and to Hold, the above described and granted premises unto the said Lane County * * *." (Emphasis added.) Plaintiffs argue that the 1946 deed conveyed only a public easement to the county, focusing on the words "right-of-way" in the instrument. Consequently, according to plaintiffs' argument, the Chases retained the fee interest in the land subject to the easement conveyed to the county in 1946 and, when the Hendersons conveyed the fee interest in that area that they had purchased from the Chases to the county in 1952, that conveyance, containing the restriction on building, operated to impose the restriction on all the property purchased by the county, including the easement area previously conveyed in 1946. It follows then under plaintiffs' argument that all of the land owned by the county in Tax Lot 500 is subject to the restriction on building.

    In support of their argument, plaintiffs point out that the phrase "right of way" is a term of art, relying on the

holding in *Cappelli v. Justice*, 262 Or 120, 496 P2d 209 (1972). In *Cappelli*, the court had before it a suit to quiet title in a 30-foot strip of land running between properties owned by private owners. 262 Or at 121-22. In the context of determining the intent of the parties and construing the language of the deed, the court explained:

> "The deed purports to convey only 'A right of way 30 feet in width * * *.' In common parlance the term 'right of way' signifies an easement. In the absence of special circumstances indicating a contrary meaning, the courts have generally construed the term in accordance with common usage."

*Id.* at 128-29 (omission in original). While we agree with the assertion that the phrase "right of way" generally signifies the grant only of an easement interest and not a fee interest, each case must be decided on its own facts, and we are bound by the principles expressed above to determine the intent of the parties in this case regarding the 1946 deed.

The 1946 deed from Morris and Chases to Lane County is a deed from private property owners to a public body, in contrast to a conveyance between private citizens. The deed uses inclusive language; it conveys "all the following real property[,]" and it defines that property as "[a]ll that portion of an 80 foot right of way." Significantly, it does not use the word "easement," nor does it otherwise purport to limit the nature of the estate being conveyed, with the possible exception of the use of the words "right of way." The nature of an easement is that the fee interest in the land over which the easement runs remains with the owner of the land, thus enabling both the holder of the easement and the fee owner to use the land consistently with the enjoyment of the easement. Thus, the grant of a "right of way" across private property from one private property owner to another suggests the grant of an easement. In contrast, the conveyance of privately owned property to a public body for a public "right of way" is inconsistent with the understanding that the grantor retains some privately held right to use the conveyed property after the conveyance occurs. In general, the use left to such a grantor is to use the conveyed property as a member of the public. While it is accurate that the conveyance represented by the 1946 deed is of a narrow strip of land, and the

conveying instrument refers to it as a "right of way," the language of the deed as a whole indicates that it is more likely that the words "right of way" are surplusage and refer to the purpose for which the land conveyed will be used by the grantee[5] rather than as a limitation by the grantor on the nature of the estate conveyed. Plaintiffs counter that the consideration of a dollar in the 1946 deed also supports the interpretation that the grant is an easement rather than a fee interest, but there is no evidence that one dollar was the true consideration.[6] Thus, ultimately, we are persuaded that the parties to the 1946 deed intended the county to receive the 80-foot strip in fee. It follows that the restriction against building in the 1952 deed is not applicable to the area conveyed to the county in 1946.

Our ruling leaves us to determine the validity of the restriction in the 1952 deed as it applies to the area that was conveyed in 1952. The parties apparently agree that the 1952 deed conveyed a fee estate to Lane County, and we agree. We pause, however, to consider the effect of the county's 1972 vacation order before considering the present enforceability of the restriction against building. ORS 271.140 (1971), *amended by* Or Laws 1981, ch 153, § 58, provided, in relevant part:

> "The title to the street or other public area vacated shall attach to the lands bordering on such area in equal portions: except that where the area has been originally dedicated by different persons and the fee title to such area has not been otherwise disposed of, original boundary lines shall be adhered to and the street area which lies on each side of such boundary line shall attach to the abutting property on such side."

Because under either the 1946 deed or the 1952 deed Lane County owned the fee interest in the land over which the public way existed, the operation of the statute triggered by the county's vacation of the public way did not change the ownership of the land. Rather, the effect of the vacation was to

---

[5] That purpose implicates the county's statutory authority to purchase private property in order to establish or to enlarge public roads. OCLA § 100-1223.

[6] It was not until 1967 that the legislature enacted ORS 93.030 requiring that conveyances state true and actual considerations.

eliminate the public way over the land while retaining the county's ownership of the land.

■    We turn now to the issue of the continuing enforceability of the restriction against building on defendants' property. In general, Oregon courts will enforce a restriction against building on one's own property "unless the effect of the change on the restricted area is such as to 'clearly neutralize the benefits of the restrictions to the point of defeating the object and purpose of the covenant.' " *Albino v. Pacific First Fed. S & L*, 257 Or 473, 479, 479 P2d 760 (1971) (quoting *Ludgate v. Somerville*, 121 Or 643, 651, 256 P 1043 (1927)). The *Albino* court explained:

> "[I]t is not sufficient that there have been changes outside the restricted area, unless there have also been changes in the area itself, nor is it sufficient that, as a result of changes outside the area, the property within a restricted residential area may be more valuable for business purposes."

*Id.*

Here, the record shows that Hendersons lived in a rural area at the time that they imposed the restriction against building on the property that they conveyed to the county. They had a barn for livestock and raised chickens. Mr. Henderson said that, because he lived on the property, "he didn't want a building next to him." We deduce from the record that Hendersons were attempting by the imposition of the restriction to protect the rural environment in which they lived, understanding that development of the county's property to include the construction of a building would interfere with those desires. Plaintiffs, owners of apartment buildings and other commercial establishments on adjoining lands, cannot credibly assert that they share Hendersons' intentions. In fact, the changes since 1952 in the area surrounding the county's property, including plaintiffs' own developments, have substantially changed the character of the area from rural to 'urban. Those changes have substantially neutralized any benefit the restrictive covenant could have as originally intended, and its object and purpose have been defeated by the development that has occurred since 1952. We conclude therefore that the trial court did not err in denying plaintiffs their requested relief.

■     We turn now to defendants' cross-appeal. Regarding a driveway from plaintiffs' apartments that crosses over the county's property to connect with Marcola Road, the trial court held that "the evidence establishes an implied dedication of the driveway to public use." As a result, the court refused to enjoin plaintiffs' use of the driveway and rejected defendants' counterclaims. Initially, we must determine our standard of review. Plaintiffs argue correctly that the standard of review for claims made under ORS 28.010-28.160 depends on the nature of the dispute itself. *May v. Chicago Insurance Co.*, 260 Or 285, 291-92, 490 P2d 150 (1971). They assert that defendants' counterclaims are not equitable in nature seeking to quiet title; rather they sound in "ejectment" or are legal in nature.[7] As a result, they say, the trial court's findings can be set aside only if there is no evidence to support them.

Defendants respond that, because they seek to enjoin plaintiffs' use of the driveway, the nature of the relief they seek is equitable in nature. One difficulty with defendants' position is that the county sought compensatory damages "in an amount to be determined at trial" as well as an injunction in its counterclaim, and Sooys asked the court to declare that they "have a right of exclusive use and possession of the entire Leased property" and that "Plaintiffs are presently using portions of the Leased Property without Sooys' authorization and consent and as such are trespassers." Nonetheless, for purposes of our standard of review, we concern ourselves with the "essence" of the claims. *Kassel v. City of Salem*, 34 Or App 739, 741 n 1, 579 P2d 875 (1978). We conclude that the essence of defendants' claims are to prevent plaintiffs, through a declaratory judgment, from using a portion of defendants' lands as a driveway and, thus, the core relief that they seek is equitable in nature. *See, e.g., FOPPO v. Washington County*, 142 Or App 252, 258, 920 P2d 1141 (1996) (holding that, because the declaration sought was analogous to injunctive relief, the declaratory judgment

---

[7] ORS 105.005(1) provides, in relevant part, that "[a]ny person who has a legal estate in real property and a present right to the possession of the property, may recover possession of the property, with damages for withholding possession, by an action at law."

proceeding was equitable in nature and this court therefore reviews *de novo*).

■ Plaintiffs argue that "[t]his is only a case where a public body (Lane County) granted plaintiffs, their predecessors and the public a revocable right to use a small piece of land (perhaps 10' to 15') to connect Plaintiffs' driveway to a public road more than 30 years ago." While plaintiffs acknowledge that generally Lane County has the right to deny private landowners access across its property to public roads, they contend that the trial court ruled that the decision whether to deny plaintiffs and the public access from Marcola Road to their property should be made administratively by the Lane County Board of Commissioners with the opportunity for all interested parties to be heard, rather than as a response to plaintiffs' action. Alternatively, plaintiffs assert that the trial court correctly found that there has been an implied dedication by the county of its land for purposes of access to plaintiffs' property. They point to the fact that Lane County itself constructed concrete approaches and drainage improvements so as to permit the use of the driveway across their land and that the county has permitted the public to use the driveway for more than 30 years in order to gain access to plaintiffs' apartment buildings. Plaintiffs add that, until this litigation commenced, the county never challenged their right to use the driveway.

The county responds that under ORS 368.326 it has no authority to vacate an interest in property that is within a city and that the county's land is presently within the City of Springfield. The county also contends that the trial court correctly found that there was no express dedication of the driveway to public use and that plaintiffs are unable to prove that the city impliedly dedicated the driveway to public use by clear and unequivocal actions demonstrating that intent.

■ We agree with defendants that the record before us contains no evidence of an express dedication. For an implied dedication of land to the public to occur, there must be a clear and unequivocal manifestation by the owner of the property of an intent to devote it to public use. *Muzzy v. Wilson*, 259 Or 512, 518, 487 P2d 875 (1971). Under ORS 275.027, "[t]he rights of any county to public lands are not extinguished by

adverse possession." Also, as the county correctly argues, the fact that the apartment occupants and their invitees have used the driveway for many years is as consistent with the county's acquiescence in that use as it is with an implied intent to dedicate the land to public use.

There is, however, more evidence in the record regarding the county's intent to dedicate a way across its land than plaintiffs' mere use of the driveway. When Lane County improved Marcola Road in the 1980s, it constructed a concrete driveway and associated drainage improvements from the road across its land to plaintiffs' property. It also assessed itself for the costs of the improvement. There is also evidence that in 1982 a county engineer, in making a report about a proposed relocation of Marcola Road, recognized the need to "reserve out an easement for the apartments." Although the county dismisses that report as suggesting options that the county never acted on, that report, together with the county's improvements to its own property to provide better access to Marcola Road from the apartments, persuades us that the county intended that the driveway be used by the public. There appears to be no other reasonable explanation for the county's construction of permanent improvements on its own property that benefit a private property owner.

There is also another factor that concerns us. The driveway across the county's land provides access for fire and police protection. Apparently, the trial court believed that there could be the potential of substantial and irreparable injury to the public if an injunction issued. In that regard, our analysis is informed by the Supreme Court's opinion in *Minto v. Salem Water Etc. Co.*, 120 Or 202, 250 P 722 (1926). In that case, the defendant company was under a contractual obligation to supply the inhabitants of the City of Salem with water. *Minto*, 120 Or at 205. The plaintiff brought suit to enjoin a continuing trespass by the defendant. *Id.* at 218. The plaintiff contended that the defendant used the plaintiff's property in excess of the terms of an easement granted by the plaintiff to the defendant's predecessors in interest. *Id.* In determining whether the plaintiff was entitled to relief, the court said that the defendant "ought to do one of three things: (1) Abide by its contract; (2) Compensate [the] plaintiff for

rights taken in excess of those granted, or (3) Abandon the easement and vacate the premises." *Id.* at 218-19. The court said, however,

> "It does not follow * * * as a matter of right, because there has been a breach of plaintiff's legal rights, that he is entitled to the extraordinary remedy of injunction. Even though there has been a continuing trespass and a multiplicity of actions would result if the plaintiff were obliged to seek redress at law, equity will not raise its restraining arm if, by so doing, great and irreparable injury might result to the public[.]"

*Id.*

Here, even if plaintiffs were deemed to be trespassers, we would be reluctant to grant injunctive relief in light of the history of the use of the county's property for access to the apartments and the significance of the injury that might occur if access were denied.[8] In summary, we conclude for all the above reasons, as did the trial court, that there has been an implied dedication of the driveway to public use by the county, and, therefore, it follows that injunctive relief is not available.

Affirmed on appeal and cross-appeal.

---

[8] We acknowledge that there is another access to Marcola Road from plaintiffs' apartments, but we think that it is in the public's interest to have more than one access to multiple occupancy dwellings for purposes of police and fire protection.