Argued and submitted October 27, 2010, general judgment vacated and remanded
for entry of judgment consistent with this opinion;
supplemental judgment reversed May 25, 2011,
petition for review denied February 2, 2012 (351 Or 545)

## C-LAZY-K RANCH, INC.,
an Oregon corporation;
James Gordon Monroe and Carolyn Dale Monroe,
as Trustees of the Monroe Revocable Living Trust
U/T/A dated June 19, 2002,
*Plaintiffs-Respondents,*

*v.*

## Alvin ALEXANDERSON
and Mary Jo Alexanderson,
husband and wife,
*Defendants-Appellants,*

*and*

## JEFFERSON COUNTY,
a political subdivision of the State of Oregon,
*Defendant.*

Jefferson County Circuit Court
CV040202; A138409

259 P3d 53

Barbee B. Lyon argued the cause for appellants. With him on the opening brief were Jeanne M. Chamberlain and Tonkon Torp LLP. With him on the reply brief was Tonkon Torp LLP.

Michael W. Peterkin argued the cause for respondents. With him on the brief was Peterkin & Associates.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

SERCOMBE, J.

**SERCOMBE, J.**

This case involves a dispute among neighbors in rural Jefferson County over defendants' use of a road across plaintiffs' property. Plaintiffs C-Lazy-K Ranch, Inc. (C-Lazy-K) and the trustees of the Monroe Revocable Living Trust (the Monroes) own separate pieces of property over which defendants seek access. Defendants assert that the disputed road is public or, alternatively, that they have a private interest in the use of the road. Plaintiffs, on the other hand, contend that, by separate orders issued in 1921 and 1941, the Jefferson County Board of Commissioners (the board) vacated two sections of a Jefferson County road that make up the disputed road. On *de novo* review, we conclude that, although a portion of the disputed road remains public because it was not vacated by order in 1921, the public road does not extend to defendants' property line because of the 1941 order, and thus defendants may not access their property over the disputed road.

Plaintiffs filed an action seeking a declaratory judgment that a portion of the disputed road was vacated by Jefferson County by order in 1941, and that defendants have no public or private right to enter plaintiffs' property via the road.[1] Defendants filed an answer and counterclaims, requesting a declaration that neither the 1921 nor the 1941 order vacated the disputed road. Defendants also asserted several other theories seeking an alternative declaration that plaintiffs or their predecessors dedicated the road to public use after it was vacated; that the public later acquired a prescriptive easement to the road; or that they held an easement by some other operation of law. After a bench trial, the trial court ruled that the full length of the disputed road was vacated by the separate orders in 1921 and 1941, and that defendants did not possess any right to use the disputed road.

After trial, plaintiffs moved for an award of attorney fees under ORS 20.105 and sanctions pursuant to ORCP 17 and ORCP 46. The court granted plaintiffs' motion for ORCP 17 sanctions, and ruled that the appropriate sanction was the

---

[1] C-Lazy-K filed the initial complaint, but later filed an amended complaint that added the Monroes as plaintiffs. The initial complaint asked the court to declare the parties' respective rights to the disputed road in light of the 1921 order and the 1941 order. However, the amended complaint asked the court for a declaration of their rights only as to the 1941 order.

total amount of attorney fees incurred by plaintiffs during the litigation. Accordingly, the court entered a supplemental judgment awarding plaintiffs $120,818.50 in sanctions and $1,063.43 in costs. Defendants appeal from the general judgment and the supplemental judgment.[2]

The crux of this case is the legal effect of two separate orders entered by the board that vacated portions of C.C. Maling Road. This case is complicated by ambiguities in the language of the orders, and the fact that the rural nature of the area and the age of the orders imparts an uncertainty to the established names and location of the roads in the disputed area. Nevertheless, based on the text of the orders, the surrounding circumstances at the time the orders were entered, and other extrinsic evidence, we vacate and remand the general judgment with instructions to enter a modified judgment that the 1921 order did not vacate the portion of C.C. Maling Road that travels north from point X to point Y, as those points are described below. We also reverse the supplemental judgment.

Before examining the language of the orders, we explain the relevant topography of the area. The following map, taken from a map in the briefing and enhanced with identifying markers, illustrates the area as described below:

_____

[2] We address only defendants' first and second assignments of error as to the general judgment, and their sixth assignment of error as to the supplemental judgment. We reject defendants' remaining assignments of error without discussion.

C-Lazy-K owns a parcel of land in rural Jefferson County. That property is bordered on the south by a road that travels generally in a west to east direction and intersects with the disputed road in this case at point X. The road along C-Lazy-K's southern boundary is known to the west of point X as Willow Creek Road.[3] To the east of point X, the road's name is debated, but it is undisputed that the road continues to the county line between Jefferson County and Crook County. The disputed road in this case travels north from point X through a portion of C-Lazy-K's property before reaching a fork in the road. The fork in the road is identified as point Y in the above map. The "left fork" turns northwest and traverses a corner of the Monroes' property before crossing defendants' eastern property line. This is the disputed route that defendants seek to use to access their property from Willow Creek Road. The "right fork" travels from point Y in a northeasterly direction and is identified on several maps as the road "to Coon Creek Mill." That road roughly follows Coon Creek for at least a portion of its distance, although where it ultimately goes is also a matter of dispute.

Other than the disputed road, defendants' only road access to their property is from the west over Hay Creek Road and an easement that was negotiated during defendants' purchase of their property. However, defendants claim that Hay Creek Road becomes impassable in the winter, thus limiting their year-round access.

Having described the lay of the land, we address our standard of review. Declaratory judgment actions, such as this one, are treated as legal or equitable depending on the nature of the underlying claim and the relief sought. *Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 571, 994 P2d 112 (1999). Plaintiffs' complaint alleged that they had no plain or adequate remedy at law and asked the court to declare that the disputed road was vacated by the 1941 order and that defendants have no other public or private right to enter plaintiffs' property. The parties pleaded this case in equity and the parties and the court proceeded at

---

[3] This road is alternatively referred to as Grizzly Road, but to avoid further confusion in an already confusing case, unless otherwise noted, we refer to it as Willow Creek Road throughout this opinion.

trial on the assumption that the case was in equity. Our review is *de novo.*[4] *Poe v. Department of Transportation*, 42 Or App 493, 495-96, 600 P2d 939, *rev den*, 288 Or 173 (1979) (deciding that a suit to declare a piece of property as a public road was in equity where complaint and cross-complaint sought injunctive and declaratory relief, and the parties and court proceeded at trial on "the assumption that the case was in equity"); *see also RealVest Corp. v. Lane County*, 196 Or App 109, 112, 100 P3d 1109 (2004) (where the defendants' counterclaims were filed to prevent the plaintiffs, through a declaratory judgment, from using a portion of the defendants' lands as a driveway, the core relief sought was equitable in nature).

Initially, this case requires us to examine the language of the 1921 and 1941 orders to determine which roads or portions of roads the orders vacated. Our role when interpreting a county order such as the ones in this case is to determine the enacting body's intent through examination of the order's text and context. *See Wilkins v. Lane County*, 65 Or App 494, 498, 671 P2d 1178 (1983), *rev den*, 296 Or 253 (1984) (indicating that an order vacating a county road pursuant to statute is a legislative enactment); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993); *Sanchez v. Clatsop County*, 146 Or App 159, 163, 932 P2d 557 (1997) (noting that the court's role in construing a statute or ordinance is to determine the enacting body's intent); *but cf. Strawberry Hill 4 Wheelers v. Benton Co. Bd. of Comm.*, 287 Or 591, 606, 601 P2d 769 (1979) (concluding that, for purposes of review of a county decision to vacate a road, despite legislative elements in the County's decision, a county order may be a quasi-judicial determination that is subject to a writ of review).

## I.   THE 1921 ORDER

Jefferson County, in 1921, issued an order vacating C.C. Maling Road:

---

[4] ORS 19.415, which governs our standard of review in this case, was amended in 2009. Or Laws 2009, ch 231, §§ 2-3. The amendments apply to appeals in which the notice of appeal was filed on or after June 4, 2009. Because the notice of appeal in this case was filed before that date, the amendments do not apply.

"Commencing at the intersection of the said C.C. Maling [R]oad with the road commonly known as the Willow Creek Road at a point * * * in the Northwest quarter of section twenty-five, Township twelve, south, range fifteen east of the Willamette Meridian; thence in a northeasterly dir[e]ction to the intersection of said C.C. Maling [R]oad with the County line dividing and common to Crook County and Jefferson County, being 6 [1/2] miles in length, more or less."

We begin with what the parties agree on—the vacation of C.C. Maling Road in the 1921 order begins at point X, which is the intersection of the disputed road and Willow Creek Road. The parties diverge, however, on whether the order vacated the disputed road from point X to point Y continuing along the road labeled "to Coon Creek Mill," or whether the order vacated the road that travels east from point X to the county line.

Defendants contend that the 1921 order vacated the road that continues east from point X to the county line. They assert that their position is supported by the wording of the 1921 order, the relevant surrounding circumstances, and extrinsic evidence—including the original 1884 survey of C.C. Maling Road, various court documents from a 1916 circuit court case related to a blockage of C.C. Maling Road, and official documents related to the board's 1921 road vacation process.

Plaintiffs, on the other hand, maintain that the 1921 order vacated the portion of the disputed road from point X to point Y, and then continued along the road marked "to Coon Creek Mill." They rely primarily on the wording in the order, specifically the use of the direction "northeasterly," to argue that defendants' asserted interpretation would require a conclusion that the road was vacated in an easterly direction. They also contend that the road to the east of point X is known as Willow Creek Road and the interpretation of the order posited by defendants would require us to conclude that Willow Creek Road was vacated to the east. In a sense, plaintiffs' argument is a roundabout way of saying that the road to the east of point X is Willow Creek Road, not C.C. Maling Road, and thus the board could not have intended to vacate any portion of the road east of point X.

As stated, the parties agree that point X is the starting point of the road vacation. Where does it go from there? We conclude that the wording of the order, in the context of the surrounding circumstances at the time the order was entered, and related extrinsic evidence, supports defendants' contention that C.C. Maling Road was not vacated from point X to point Y.[5]

Initially, we note that the wording in the 1921 order contains some ambiguity. Although the starting point of the road vacation is clear, the terms related to the direction and length of the road vacated create ambiguity. The order states that the road is vacated from point X and "thence in a northeasterly dir[e]ction to the intersection of said C.C. Maling road with the County line dividing and common to Crook County and Jefferson County, being 6 [1/2] miles in length, more or less." First, "northeasterly" is a term of general direction, unremarkably defined as "toward the northeast." *Webster's Third New Int'l Dictionary* 1541 (unabridged ed 2002). Both of the segments of road that the parties put forth plausibly fit within the term "northeasterly." The road that continues east from point X travels somewhat north of due east, and the roadway that plaintiffs contend was affected by the 1921 order "to Coon Creek Mill" also eventually travels to the northeast, even if its initial direction from point X is northwesterly. Second, the order's statement that the road is vacated from point X for six and one-half miles "more or less" is not particularly helpful to the position of any of the parties. That is, even defendants' witnesses acknowledged at trial that from point X east along the road to the county line is approximately only three miles. Similarly, although the parties dispute whether the road "to Coon Creek Mill" ever reaches the county line, those witnesses that testified that it did generally agreed that it is likely significantly less than six and one-half miles from point X along plaintiffs' proposed route to the county line.

To resolve the ambiguity, we begin with evidence of the historical location of C.C. Maling Road. Plaintiffs

---

[5] None of the parties sought a declaration that the road to the east of point X was vacated. Instead, the issues are confined to the status of the road from Willow Creek Road to defendants' property line.

introduced two surveys of C.C. Maling Road that were conducted before the board entered the 1921 order. Both surveys establish that C.C. Maling Road ran the entire length of the disputed route, as well as along the general route from point X east to the county line. The original surveyor's report of the entire length of C.C. Maling Road was contained in Crook County's records. That survey describes the road as starting in Crook County approximately 1,272 feet east of the southwest corner of section 16, T13S, R16E, and eventually terminating in Jefferson County at a point in section 9, T12S, R15E, on the "Dalles + Prineville Road." Although the evidence at trial did not conclusively establish that the road that currently exists from point X to the county line sits in the exact roadbed that was surveyed in 1884, it was established to our satisfaction that C.C. Maling Road closely followed the now-existing roadway and, for our purposes in this case, that is enough.

Defendants also introduced a survey of C.C. Maling Road that was completed in conjunction with a 1915 lawsuit that involved public access to some of the same portions of C.C. Maling Road that are disputed in this case. In 1915, concerned residents of the area filed an action in Jefferson County Circuit Court asserting that C.C. Maling Road was a public road that had been obstructed with fences and gates, and requesting the court to issue an order to "abate said obstructions." A trial was held in 1916, and a jury found that the road obstructions were illegal. The court declared the road public and awarded costs to the complaining parties. The survey completed in conjunction with the lawsuit shows C.C. Maling Road consisted of the disputed road in this case, and extended from point X to the east.

Further, in 1919, the path of C.C. Maling Road was altered by court order, and the documentation and survey prepared in conjunction with that change also tend to support defendants' assertion that C.C. Maling Road traveled along the road east of point X. The court ordered the county surveyor to file "in the road record" a profile and field notes of the change in C.C. Maling Road. The accompanying profile and field notes also support defendants' argument of the basic location of C.C. Maling Road. Perhaps equally tellingly, none of the surveys or supporting documentation provide any

credence to plaintiffs' contention that the road "to Coon Creek Mill" was ever officially or unofficially known as C.C. Maling Road. In sum, the various surveys in existence at the time of the 1921 order establish that the road traveling east from point X was known as C.C. Maling Road, and there is no similarly convincing evidence that the road "to Coon Creek Mill" was ever referred to as C.C. Maling Road.

Defendants also introduced documentation that further supports their argument regarding the intended effect of the 1921 order. Several landowners in the area initiated the 1921 road vacation process by petition. The statutory scheme required the county roadmaster to submit a report about the potential vacation of the county road. The county roadmaster's report on C.C. Maling Road stated, in part:

> "In my opinion the portion of the C.C. Maling [Road] described in the petition for vacation should be vacated. [T]he road is not a public necessity in that it is of benifit [*sic*] to but one party; namely Joe Bland: and he has signed the petition of vacation."

As defendants established at trial, Bland's property was located over two miles to the east of point X on the county line, just south of the road traveling east from point X. Accordingly, we agree with defendants that, if the roadmaster determined that Bland was the only person affected by the 1921 vacation of C.C. Maling Road, the only logical conclusion is that the vacated road traveled close to his property. In contrast, there is nothing in the record that suggested that Bland owned property anywhere near the roadway that plaintiffs argue was vacated in 1921.

Given the text of the order and the evidence of the surrounding circumstances, and the historical location of C.C. Maling Road, we conclude that the trial court erroneously determined that the 1921 order vacated "all portions of the disputed road lying south of the intersection with Coon Creek Road."

Our resolution of the effect of the 1921 order, however, does not establish that defendants may access their property over plaintiffs' lands. We now must consider

whether the 1941 order vacated C.C. Maling Road from defendants' property line to point Y.

## II. THE 1941 ORDER

The 1941 order vacated C.C. Maling Road:

> "Beginning at the NW corner of the SE[1/4]SE[1/4] Sec. 9, Twp., 12 S., R. 15 E.W.M., said point of beginning being on the Hay Creek Prineville Road, thence running in a Southeasterly direction a distance of four miles, more or less, and terminating on the Coon Creek Road at or near the SW corner of SW[1/4]NW[1/4] Sec. 24, Twp., 12 S., R. 15, E.W.M."

The parties again agree where the road vacation begins, but dispute where it ends. The substance of their dispute is whether C.C. Maling Road was vacated to the southwest corner identified in the order, or to point Y, the intersection of C.C. Maling Road and Coon Creek Road. The southwest corner is located on defendants' land, and point Y is located on C-Lazy-K's property.

Defendants assert that the board vacated C.C. Maling Road from a point on Hay Creek Road to the southwest corner and not any farther. Primarily, they rely on a map in the county's records that references the 1941 order, and, according to defendants, shows that the road was only vacated to the southwest corner. They maintain that this map best demonstrates the intent of the wording in the order. They also contend that there is no official record of a road named Coon Creek Road, and the location of any such road is debatable, so the description of the southwest corner should control. Defendants assert that the difference between the southwest corner and the point where the road intersects with what plaintiffs assert is Coon Creek Road is 1,320 feet as the crow flies, and approximately 2,150 feet along the path of the road. Accordingly, they argue that it is "unlikely that the author of the 1941 order would have written that the termination point was 'at or near' a corner more than a thousand feet away[.]"

Defendants also focus on the use of the phrase "on the Coon Creek Road" and assert that, had the intent been to vacate the road to the intersection of C.C. Maling Road and Coon Creek Road, the author would have used "intersection"

or some other phrasing, rather than "on." Accordingly, defendants posit that the portion of the disputed road subject to the 1941 order was also known as Coon Creek Road. Under that theory, all of the wording of the order could be given effect since the road would be vacated to the southwest corner "on the Coon Creek Road."

Defendants also assert that their predecessor-in-interest at the time of the 1941 order signed the petition to vacate that portion of C.C. Maling Road. They claim that it would have been illogical for him to have done so if it restricted his access to his property.

In contrast, plaintiffs contend that the board intended to vacate the road to point Y because "on the Coon Creek Road" is the controlling term and point Y is the intersection of C.C. Maling Road and Coon Creek Road. In part, they argue that to conclude otherwise would fail to give effect to the board's use of "on the Coon Creek Road," and that established surveying principles dictate that the description of a monument controls over other elements in the description, including distance and generalized locations. Given that, plaintiffs assert that Coon Creek Road is a monument that must control over the general descriptions "four miles, more or less" and "at or near the [southwest] corner" that are contained in the order.

In our view, the wording of the order, supplemented by extrinsic evidence, supports the interpretation advanced by plaintiffs. First, we address the most glaring inconsistency in defendants' argument. As a general rule, we must, if at all possible, give effect to all of the language in the board's 1941 order. Therefore, under defendants' theory, to give effect to the order's direction that the road vacation "terminat[e] on the Coon Creek Road," we would have to conclude that Coon Creek Road and C.C. Maling Road are the same road from at least point Y to defendants' property line. That is, the order directs that the road vacation terminates "on the Coon Creek Road"; if we interpret that instruction to demonstrate that the board intended that the road was only vacated to the southwest corner, we must accept that the roadway at the

southwest corner was known as Coon Creek Road. Unfortunately for defendants, such a construction is not supported by the evidence or common sense.

First, there was significant evidence introduced at trial that the road that travels from point Y in a northeasterly direction "to Coon Creek Mill" is, at least for a portion of its length, generally known as Coon Creek Road. Unfortunately for defendants, there was a dearth of evidence that the road from point Y to defendants' property line is similarly known as Coon Creek Road. Second, an affidavit completed by the county surveyor in 1941 as part of the statutory process to vacate C.C. Maling Road indicates that C.C. Maling Road and Coon Creek Road were not the same road from point Y to defendants' property line. Specifically, the affidavit indicates that the surveyor posted notices in four places of the pending petition to vacate C.C. Maling Road. One of those notices was posted "[o]n a post fronting on the Coon Creek Road near the [southwest corner]" while another was posted "[o]n a post fronting the road described in said notice [i.e., C.C. Maling Road] attached hereto." Defendants offer no plausible explanation for why the board would intend to end the vacation at a point on C.C. Maling Road, but refer to that point by using the alternative road name of Coon Creek Road.

Therefore, we agree with plaintiffs and several of the witnesses at trial that the best way of giving effect to all of the language in the 1941 order is to interpret the terminus of the road vacation as the intersection of C.C. Maling Road and Coon Creek Road, and to give the other terms containing the inexact qualifiers "at or near" and "more or less" effect as general locators, but not as controlling terms. Such an interpretation is supported by the testimony of various surveyors at trial that a natural monument or ascertained boundary, such as an identified road, would control over a general description of approximate distance or location "at or near" a corner section. *See also* ORS 93.310(2) (stating that, in construing a descriptive part of a conveyance of real property, "[w]hen permanent and visible or ascertained boundaries or monuments are inconsistent with the measurement, either of lines,

angles or surfaces, the boundaries or monuments are paramount"). As explained by one particular witness, in his opinion, the phrase "terminating on the Coon Creek Road" is controlling and the terms referring to a distance of 4 miles "more or less" and "at or near" the southwest corner are "helpful in locating that position but not controlling." We, therefore, conclude that the trial court was correct in determining that the 1941 vacation order vacated C.C. Maling Road from Hay Creek Prineville Road to Coon Creek Road (point Y).

## III. SUPPLEMENTAL JUDGMENT

Defendants' final assignment of error challenges the trial court's order awarding plaintiffs sanctions under ORCP 17 in an amount equal to all of the attorney fees that plaintiffs incurred from the inception of the lawsuit. Defendants assert that there are a number of problems with the court's ruling, but, before discussing them, we set forth the relevant procedural history.

After trial, plaintiffs concurrently filed a statement of attorney fees and cost bill, a memorandum in support of attorney fees citing ORS 20.105, and a motion for sanctions pursuant to ORCP 17. The attorney fees statement and memorandum in support asserted that plaintiffs were entitled to $120,818.50 in attorney fees accrued during the life of the litigation and $1,063.43 in costs. In their separate motion for ORCP 17 sanctions, plaintiffs argued that defendant Alvin Alexanderson, who is a member of the Oregon State Bar and acted as his own attorney in this case through the filing of defendants' third amended answer and counterclaims, violated ORCP 17 C(4) by signing and filing various documents throughout the proceedings without disclosing that he lacked evidence to support allegations contained in those documents. In support of their argument, plaintiffs attached the third amended answer and counterclaims to their motion and identified the supposedly unsupported allegations by highlighting numerous factual and legal assertions in the pleading that related to defendants' answer and seven of the eight counterclaims they asserted.

Defendants opposed plaintiffs' ORCP 17 motion, contending, among other things, that the motion was

untimely and that plaintiffs were seeking sanctions for certifications that occurred in a pleading that was superseded by defendants' fourth amended answer.

The trial court, by letter opinion to counsel, stated:

"Also, I have received defendant's objections to the Statement for attorney fees and cost bill; a declaration of Alvin Alexanderson in Support of his Objections, and his opposition to the Motion for Sanctions.

"* * * * *

"I find that the Statement of Fees to be reasonable and well documented.

"I am impressed with the continued efforts of Plaintiff's attorneys to discourage defendant from pursuing the issues in a Court trial due to their opinion that the claims were destined for failure.

"These efforts also included notice that attorney fees would be sought if defendant's efforts failed. I find also[ ] that there was sufficient notice and intent to seek sanctions if plaintiffs were successful.

"I find that the Plaintiff corporation is entitled to recover 100% of the total attorneys fee of $120,818.50, together with costs in the amount of $1,063.43. The enhanced prevailing fee of $5[,]000.00 is denied.

"This ruling is not apportioned and is made pursuant to ORS 20.075(1)(a)[6] and pursuant to ORCP 17."

Subsequently, the court entered an order awarding costs and granting sanctions to plaintiffs, stating, in part:

"Defendant Alvin Alexanderson violated ORCP 17 on a number of occasions by alleging facts that were not supported by any evidence while failing to inform Plaintiffs or

---

[6] ORS 20.075(1)(a) provides:

"A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal."

the Court, pursuant to ORCP 17 C(4), that evidence to support the alleged facts was lacking;

"The specific factual assertions that were not supported by any evidence and that form the basis for this Order are indicated on the copy of Defendants' Third Amended Answer signed by Defendant Alexanderson and attached hereto as Exhibit '1';

"The lack of evidentiary support for the factual assertions at issue was revealed by (a) the evidence actually produced at trial and (b) the lack of any adequate explanation provided by Defendant Alexanderson in response to Plaintiffs' Motion;

"Plaintiffs repeatedly informed Defendant Alexanderson throughout these proceedings that they believed Mr. Alexanderson was acting in violation of ORCP 17 and that Plaintiffs would seek sanctions and attorney fees if they prevailed in the action;

"Plaintiffs repeatedly attempted to discourage Defendant Alexanderson's conduct that forms the basis of this order;

"ORS 20.075(1)(a) supports an award of attorney fees as sanctions because Defendant Alexanderson pled the unsupported allegations recklessly and/or in bad faith;

"Defendant Alexanderson's violation of ORCP 17 touched every aspect of this case such that (a) if Defendant Alexanderson had not violated ORCP 17 no trial would likely have been necessary, (b) it is impossible to accurately apportion Plaintiffs' attorney fees attributable to Defendant Alexanderson's violations and (c) an award of the entire amount of Plaintiffs' reasonable attorney fees is necessary and appropriate to compensate Plaintiffs for Defendant Alexanderson's violations;

"Plaintiffs' Statement for Attorney Fees, in the amount of $120,818.50, is reasonable and well documented[.]"

(Internal numbering and formatting omitted.) A supplemental judgment awarding costs and fees was subsequently entered by the court.

ORCP 17 C(4) states that, by signing a pleading, motion, or other document, a party or attorney certifies that "the allegations and other factual assertions" in the document "are supported by evidence." If the party does not wish

to certify an allegation or factual assertion as supported by evidence, the party or attorney must specifically identify those allegations. *Id.* A court can impose sanctions for false certifications after notice and an opportunity to be heard. ORCP 17 D(1). A motion for sanctions by a party must be separate from other motions and describe with specificity the alleged false certification. ORCP 17 D(3). Further, "[s]anctions may not be imposed against a party until at least 21 days after the party is served with the motion * * *." *Id.* And, the court "may not impose sanctions against a party if, within 21 days after the motion is served on the party, the party amends or otherwise withdraws the pleading, motion, document or argument in a manner that corrects the false certification specified in the motion." *Id.*

Any sanctions issued must

> "be limited to amounts sufficient to reimburse the moving party for attorney fees and other expenses incurred by reason of the false certification * * * and upon clear and convincing evidence of wanton misconduct amounts sufficient to deter future false certification by the party or attorney and by other parties and attorneys."

ORCP 17 D(4). The sanction must include an order, and the order imposing sanctions "must specifically describe the false certification and the grounds for determining that the certification was false. The order must explain the grounds for the imposition of the specific sanction that is ordered." ORCP 17 D(5).

When a court grants or denies a request for sanctions under ORCP 17 D, the court must enter findings pursuant to the rule to facilitate adequate appellate review. *Staten v. Steel*, 222 Or App 17, 42, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009). If the court fails to do so, we must remand for the trial court to enter appropriate findings and a new order deciding the request based on those findings. *Id.* at 43.

On appeal, defendants challenge the timeliness of plaintiffs' ORCP 17 motion. They contend that the court lacked authority to grant the motion because plaintiffs filed it several months after the third amended answer had been stricken and superseded by the fourth amended answer.

Defendants argue that ORCP 17 D(3), by its explicit terms, grants the nonmoving party 21 days after the motion for sanctions is served to amend or otherwise withdraw the offending document in a manner that corrects the false certification specified in the motion. Defendants assert that, under the circumstances in this case, there is no practical way for them to take advantage of the "safe harbor" provisions of ORCP 17 D(3), because they cannot withdraw a superseded pleading, and they have already amended it.

Defendants also cite to federal case law interpreting a similar provision in the Federal Rules of Civil Procedure, FRCP 11, for the proposition that a party cannot delay a motion seeking sanctions under ORCP 17 until the conclusion of the case. *See Barber v. Miller*, 146 F3d 707 (9th Cir 1998); *Morganroth & Morganroth v. DeLorean*, 123 F3d 374 (6th Cir 1997).

We need not address defendants' latter contention, because we conclude that plaintiffs' motion and the court's order imposing sanctions incorrectly relies on factual assertions and allegations in the third amended answer, which was not the operative pleading in the case at the time of the request for sanctions. We recognize that plaintiffs, in their motion for ORCP 17 sanctions, raised the general concern that

> "[m]ost or all of the unsupported allegations in Defendants' Third Amended Answer found their way into the Fourth Amended Answer upon which trial progressed. This Fourth Amended Answer provides an additional basis for sanctions but Plaintiffs focus on the Third Amended Answer because Mr. Alexanderson signed this document and, while Ms. Chamberlain signed the Fourth Amended Answer, it is apparent Mr. Alexanderson was the source of the unsupported allegations."

Nevertheless, plaintiffs identified the allegedly false certifications by highlighting numerous passages in defendants' third amended answer and failed to identify anything in what was then the operative pleading in this case. Accordingly, plaintiffs' motion failed to comply with ORCP 17 D(3). Therefore, even assuming *arguendo* that the motion was timely, it did not provide defendants the specificity required

by ORCP 17 that would put defendants on notice as to what the false certifications were.

Further, the court's order only identifies factual assertions from the third amended answer as falsely certified. There are no findings that assertions in the fourth amended answer violated ORCP 17.

In sum, because the third amended answer was superseded by the fourth amended answer prior to plaintiffs' motion for ORCP 17 sanctions, any award of sanctions cannot be based on a false certification in the third amended answer. Plaintiffs' motion failed to identify any false certifications in the operative pleading at the time of the motions, and the court's order also failed to identify any false certifications in the fourth amended answer. Accordingly, we reverse the supplemental judgment.[7]

General judgment vacated and remanded for entry of judgment consistent with this opinion; supplemental judgment reversed.

---

[7] Because we reverse the supplemental judgment on the basis that plaintiffs' motion incorrectly relied on an inoperative pleading, we do not reach defendants' argument that any award of sanctions should have been limited to those fees attributable to the third amended answer. Nevertheless, we note that the rule clearly requires that sanctions be limited to expenses incurred specific to the false certification, unless the court finds clear and convincing evidence of wanton misconduct. ORCP 17 D(4).