Argued and submitted August 6, 2008, affirmed April 1, 2009

# Theresa CASSIDY,
## fka Theresa Pavlonnis,
*Plaintiff-Appellant,*

*v.*

# Richard A. PAVLONNIS,
*Defendant-Respondent,*

*and*

# Dawn PAVLONNIS
## and Channing Hartelius,
*Defendants.*

Lincoln County Circuit Court
032291; A131746

205 P3d 58

Robert P. Johnson argued the cause and filed the briefs for appellant.

Guy B. Greco argued the cause and filed the briefs for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Rosenblum, Judge.

ROSENBLUM, J.

## ROSENBLUM, J.

Plaintiff brought this action alleging that defendant breached a property settlement agreement that the parties, who are former spouses, entered into as part of the dissolution of their marriage. During their marriage, the parties owned a house near Lincoln City, which they used as a vacation home. The property settlement agreement (PSA) provided that defendant would receive legal title to the house and that plaintiff would receive a life estate and would be entitled to one-third of the proceeds in the event that the house was sold. Four years after the parties entered into the PSA, plaintiff gave defendant a quitclaim deed to the property. Thereafter, defendant sold the property and refused to pay plaintiff a portion of the proceeds, leading plaintiff to bring this action for breach of contract. The trial court granted summary judgment in defendant's favor, concluding that the quitclaim deed unambiguously conveyed all of plaintiff's interests in the property, including her interest in a share of the proceeds. Plaintiff appeals, arguing that the deed is ambiguous and, thus, that summary judgment was inappropriate. We affirm.

In reviewing a grant of summary judgment, we view the facts and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party—in this case, plaintiff—to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. ORCP 47 C. The parties' PSA was approved by the dissolution court and incorporated into the judgment dissolving the marriage in 1996. With respect to the property at issue in this case—the parties' vacation home—the PSA provides:

> "It is agreed that such property shall be transferred to [defendant] and that he shall hold such property for the benefit of the parties and their children as herein provided. [Plaintiff] shall have a life estate interest in the subject property and have a right to the proceeds of sale as more fully set forth in this paragraph."

The PSA provides further that defendant would pay all mortgage payments, taxes, and insurance. It also provides:

"The parties also agree that [plaintiff] may request in writing that the foregoing property be sold, and upon sale of the same she shall be entitled to receive either one-third of the net proceeds after deduction of sales costs only of the same or, in the event [defendant] desire[s] to acquire her interest therein, one-third of the mutually agreed upon fair market value of the property."

The PSA also provides that its provisions may be modified by, among other things, "operation of law" or a "joint written agreement between the parties * * *."

Pursuant to the PSA, plaintiff gave defendant a bargain and sale deed for the property, but defendant never recorded the deed.

Although defendant was responsible for making the mortgage payments, the PSA did not require him to refinance the existing mortgage, which was in both parties' names. Defendant had a poor credit rating, which, because plaintiff's name was still on the mortgage, adversely affected plaintiff's credit rating. In 2000, plaintiff asked defendant how she could restore her credit rating. He told her that she needed to give him a quitclaim deed so that he could refinance the mortgage in his own name. Plaintiff executed a quitclaim deed that states the following:

"[Plaintiff] does hereby remise, release, and quitclaim unto [defendant] * * * all of the grantor's right, title and interest in that certain real property with the tenements, hereditaments, and appurtenances thereunto belonging or in any way appertaining, situated in the County of, [sic] State of Oregon, described as follows, to-wit:

"Lot 11 and the North 1/2 of Lot 12, Block 1, BARRIGAR CREST, in the City of Lincoln City, County of Lincoln and State of Oregon.

"and all rights in regard to the estate in this property retained or given to grantor pursuant to the decree of dissolution entered on March 6, 1996 in Clackamas County Circuit Court, Case No. 95-10-148.

"To Have and to Hold the same unto the grantee and grantee's heirs, successors, and assigns forever.

"The true and actual consideration paid for this transfer, stated in terms of dollars, is $1.00."

The quitclaim deed was recorded in Lincoln County, and defendant subsequently refinanced the property in his name only. In 2002, defendant sold the property without giving notice to plaintiff. He did not pay any of the sale proceeds to plaintiff.[1]

Plaintiff later learned that defendant had sold the house. In 2004, she brought this action alleging, among other things, breach of contract and seeking a portion of the proceeds of the sale of the house.[2] Defendant moved for summary judgment, arguing that the PSA was modified by the quitclaim deed. He contended that the deed relinquished plaintiff's right to the proceeds from a subsequent sale of the property. Plaintiff opposed the motion, asserting that the quitclaim deed relinquished at most only plaintiff's life estate in the property and did not affect her right to a share of the proceeds from a sale, which she argued was a personal property interest. The trial court granted the motion, stating, "The release by the Plaintiff via quitclaim deed of all of her right, title and interest in the subject property, likewise included any right she might otherwise have had to proceeds from a future sale." The court entered a judgment in defendant's favor.

■ On appeal, plaintiff argues that the trial court erred in granting defendant's motion for summary judgment because a genuine issue of material fact existed regarding the extent of the interest conveyed by the quitclaim deed. She contends that the deed is ambiguous because it does not state whether she relinquished her right to a share of the proceeds from a sale of the property, which she again characterizes as a personal property interest rather than an interest in the real property.[3] In asserting that the deed is ambiguous,

---

[1] Plaintiff named the buyer of the property as a defendant in this action in the trial court, but she appeals only the trial court's grant of summary judgment with respect to her former husband.

[2] In a separate claim, plaintiff alleged that defendant fraudulently induced her to enter into the PSA, asserting that he had never intended to hold the property for the benefit of the parties and their children or to pay plaintiff a portion of the proceeds if he sold the property. Plaintiff makes no argument on appeal in relation to that claim, so we do not consider it.

[3] Plaintiff alternatively characterizes the sale proceeds as "the *res* of a trust fund created by the proceeds from the sale of the house." She contends that her

plaintiff points to the circumstances surrounding the execution of the deed—namely, her reason for executing it—arguing that the circumstances give rise to a reasonable inference that she did not intend to relinquish her interest in the proceeds of a future sale of the property.

In response, defendant contends that plaintiff's construction of the deed is implausible, arguing that the quitclaim deed unambiguously relinquished all of plaintiff's interest in the property.[4] Because, in his view, the deed is unambiguous, defendant argues that no factual issues remain to be decided and that the trial court correctly granted summary judgment in his favor.

A deed is subject to the ordinary rules of contract construction. *RealVest Corp. v. Lane County*, 196 Or App 109, 116, 100 P3d 1109 (2004). In a dispute over the meaning of a contract, a party is entitled to summary judgment only if the terms of the contract are unambiguous. *Milne v. Milne Construction Co.*, 207 Or App 382, 388, 142 P3d 475, *rev den*, 342 Or 253 (2006). A term in a contract is ambiguous if, when examined in the context of the contract as a whole, including the circumstances in which the agreement was made, it is susceptible to more than one plausible interpretation. *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 319, 129 P3d 773, *rev den*, 341 Or 366 (2006); *see also Abercrombie v. Hayden Corp.*, 320 Or 279, 292, 883 P2d 845 (1994) (a court may "consider parol and other extrinsic evidence to determine whether the terms of an agreement are ambiguous"); *City of Eugene v. Monaco*, 171 Or App 681, 687, 17 P3d 544 (2000), *rev den*, 332 Or 240 (2001) ("[T]he extrinsic evidence that may be considered is limited to the circumstances under which the agreement was made."). Thus, in determining

interest in the trust was not a real property interest and thus was not conveyed by the quitclaim deed. Plaintiff did not make that characterization or raise that argument in the trial court. We therefore decline to consider the argument as unpreserved.

[4] Defendant also contends that plaintiff failed to preserve the argument that the deed is ambiguous, asserting that she argued to the trial court only that the quitclaim deed *unambiguously* did not relinquish her interest in the sale proceeds. We have previously held that, because the courts have an independent obligation to determine whether a writing is ambiguous, a party who, in opposing a motion for summary judgment, asserted to the trial court only that a writing was unambiguous is not precluded from arguing on appeal that the writing is ambiguous. *See Gaber v. Gaber*, 176 Or App 612, 617 n 3, 32 P3d 921 (2001). We decline to revisit that holding here.

whether summary judgment was appropriate in this case, we first examine the text and context to determine whether plaintiff's construction of the deed is plausible.

█ We conclude at the outset that, if nothing else, the quitclaim deed unambiguously conveyed all of plaintiff's real property interests. The first paragraph of the deed expressly "assigns *all* of the grantor's right, title and interest in that certain *real* property * * *." (Emphasis added.) Nothing else in the deed or in the context, including the circumstances in which the agreement was made, renders that paragraph ambiguous.

Two questions remain: (1) Was plaintiff's right to a portion of the sale proceeds a real property interest or a personal property interest? (2) If it was a personal property interest, did the deed unambiguously convey it as well? We conclude that plaintiff's interest in the proceeds was a real property interest and therefore do not reach the second question.

In support of her contention that that right to a portion of the proceeds was a personal property interest, plaintiff relies on the doctrine of equitable conversion. For the reasons that follow, that doctrine does not support plaintiff's position.

 "Because the ownership of real property is divisible in so many ways, a real property owner often is described as holding a 'bundle of sticks.' " *Bedortha v. Sunridge Land Co., Inc.*, 312 Or 307, 311, 822 P2d 694 (1991). A property owner's right to convey the property in exchange for money is a real property interest. *See id.* ("The portion of the 'bundle of sticks' retained by the vendor in a land sale contract includes * * * the right to receive contract payments * * *."). Under the doctrine of equitable conversion, when a property owner enters into a land sale contract, "the purchaser of the land is deemed the equitable owner thereof, and the seller is considered the owner of the purchase price," which is a personal property interest.[5] *Panushka v. Panushka*, 221 Or 145, 149-50, 349 P2d 450 (1960). "The doctrine is based on the maxim that

---

[5] In some contexts, the seller's interest in the purchase price is not deemed to be severed from the interest in the real property and, thus, is not treated as a distinct personal property interest. *See, e.g., Bedortha*, 312 Or at 313 (a judgment lien on real property that is the subject of a land sale contract attaches to both the legal title to the property and the right to receive contract payments).

equity in a proper case will regard as done that which ought to be done." *Heider v. Dietz*, 234 Or 105, 112, 380 P2d 619 (1963). In other words, under the doctrine, the seller is deemed the owner of the sale proceeds—personal property— when the buyer has agreed to pay the proceeds. Before the sale agreement is made, the seller has only a real property interest.

In this case, the parties agreed that plaintiff would be entitled to receive one-third of the proceeds *in the event that the property was sold* (or one-third of the fair market value if defendant opted to acquire plaintiff's interest in the property upon plaintiff's request that the property be sold). Given that defendant had not sold the property or agreed to acquire plaintiff's interest in it at the time that plaintiff gave him the quitclaim deed, there was no agreement that equity would "regard as done," and, thus, no proceeds in which plaintiff could take a personal property interest. Accordingly, plaintiff's interest in the proceeds of a future sale remained a real property interest.

Because the property had not been sold when plaintiff gave defendant the quitclaim deed, her interest in the proceeds of any future sale was a real property interest. It follows that the interest was included in the conveyance effected by the quitclaim deed. Accordingly, we conclude that the trial court did not err in granting summary judgment in defendant's favor.

Affirmed.