Submitted September 7, reversed and remanded December 7, 2011

In the Matter of the Estate of
Acy Dean Hammond, Deceased.

Michael Coleman HAMMOND,
*Appellant,*

*v.*

Jerry James HAMMOND,
aka Jerome James Hammond;
Sherman Dean Hammond;
and Sara Hammond,
Individually
and as Personal Representative of the Estate of
Acy Dean Hammond,
*Respondents.*

Jackson County Circuit Court
09154P6; A146124

268 P3d 691

Robert M. Stone filed the briefs for appellant.

Eugene V. Anderson filed the brief for respondents Sherman Dean Hammond and Sara Hammond, individually.

Appearance for respondent Sara Hammond as personal representative of the Estate of Acy Dean Hammond waived by Martial E. Henault.

No appearance for respondent Jerry James Hammond.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Hadlock, Judge.

HADLOCK, J.

**HADLOCK, J.**

Acy Dean Hammond, who died in October 2001, had three sons: petitioner Michael Hammond, and respondents Sherman Hammond and Jerome "Jerry James" Hammond. This case relates to the sons' disagreement about which of them now own certain real property in Jackson County that Acy owned while she was alive. The dispute arose because of a disparity in terms between (1) a 1985 deed that purported to convey the property from Acy to Sherman Hammond "as a survivor" and (2) Acy's May 2000 will, which purported to divide interests in the property among her three sons.[1]

In March 2009, petitioner filed an action seeking to probate Acy's will and to be appointed her personal representative. Later that year, he sought a declaration regarding ownership of the real property. The trial court declared that respondent owns the property in fee simple by virtue of the 1985 deed. On appeal, petitioner assigns error to that ruling. We agree that the trial court erred and, accordingly, reverse and remand.

We begin by addressing our standard of review. The parties contend that we should review the trial court's decision *de novo* because it sounds in equity. We agree that the action is equitable in nature. *See Neucshafer v. McHale*, 76 Or App 360, 362-63, 709 P2d 734 (1985) (a declaratory judgment proceeding to quiet title to personal property generally is equitable). However, we no longer review judgments in all equitable proceedings *de novo*. Rather, *de novo* review is now discretionary in most equitable cases, like this one, in which the notice of appeal was filed after June 4, 2009. ORS 19.415(3)(b). Petitioner does not explain why we should exercise our discretion to review this matter *de novo*, and we discern no reason to do so. Accordingly, "[w]e review the trial court's legal conclusions for errors of law," and, had the trial court made factual findings, we would be bound by those findings if any evidence in the record supported them. *Neff v. Sandtrax, Inc.*, 243 Or App 485, 487, 259 P3d 985, *rev den,*

---

[1] Jerry James Hammond did not participate in the underlying circuit court litigation and does not appear on appeal. Accordingly, we use the term "respondent" to refer exclusively to Sherman Hammond throughout the remainder of this opinion.

350 Or 716 (2011). The trial court appears to have ruled on the deed's meaning purely as a legal matter, however, without making explicit or implicit findings. Consequently, we recite the undisputed facts as the parties presented them to the trial court, noting additional disputed facts when relevant.[2]

Acy owned and lived on the Jackson County property that is the subject of this litigation. In 1985, Acy executed a statutory bargain-and-sale deed providing that "Acy Dean Hammond Grantor, conveys to [respondent], as a survivor" that real property. The deed was recorded three days later. According to respondent, he then began to pay one third of the property taxes (which he claims were levied against both him and Acy) and also began to perform maintenance work on the property. Acy continued, however, to live in the main residence located on that land.

In May 2000, Acy signed a will that also purported to declare what would happen to her real and personal property after her death. The will directed that the real property be divided, with various interests in the property apportioned among the three sons.

Acy died in October 2001. For at least the last eight months of her life, petitioner lived with and cared for Acy in her home on the property; he still lives in that house.[3] Jerry James has lived in a separate dwelling on the property for several years. Respondent lives on an adjacent parcel that he owns with his wife, Sara Hammond. Respondent asserts, however, that he continued caring for the subject property after Acy's death, believing that he owned it under the terms of the 1985 deed.

---

[2] Because the trial court's ruling is based solely on its interpretation of ORS 93.180 (2007) and the text of the deed, that ruling cannot be said to encompass any implicit factual findings. Accordingly, this appeal does not implicate the rule from *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968), which provides that we presume, in the absence of express factual findings, that the trial court implicitly resolved disputed factual questions in a manner consistent with its ultimate ruling in the case.

[3] The parties disagree about exactly how long petitioner lived with Acy.

In March 2009, over eight years after Acy's death, petitioner filed a petition in which he sought to probate Acy's will and to be appointed as her personal representative.[4] Soon thereafter, he requested a declaration that the 1985 deed was invalid and that he was entitled to either a one-half interest in the property under Acy's will or a one-third interest in Acy's estate, including the real property, under the probate code. In response, respondent maintained that the property had passed to him in fee simple under the terms of the 1985 deed and ORS 93.180(2). Respondent argued in the alternative that petitioner's claim was barred by the doctrine of laches because, respondent asserted, petitioner had known since before Acy's death that respondent claimed ownership of the property. The trial court agreed with respondent's statutory argument and issued a letter opinion stating:

> "I find that the deed executed by Acy Dean Hammond conveying the property to [respondent] is valid. I find that the language 'as a survivor' qualifies under ORS 93.180(2) to create a tenancy in common in the life estate with cross-contingent remainders in the fee simple. Therefore, upon death of one, the other is the holder in fee simple. The language in the will does not revoke the deed. It is not necessary to resolve the issue of laches."

The trial court subsequently entered a general judgment declaring that respondent owns the property in fee simple. Petitioner appeals, challenging that conclusion.

In reviewing a deed that conveys property, our goal is to determine the parties' intent, "subject to the ordinary rules of contract construction." *Cassidy v. Pavlonnis*, 227 Or App 259, 264, 205 P3d 58 (2009); *see RealVest Corp. v. Lane County*, 196 Or App 109, 116, 100 P3d 1109 (2004) (stating goal). As we explained in *RealVest Corp.*:

---

[4] After respondent objected to petitioner being appointed personal representative, the trial court held a hearing and ultimately ordered that respondent's wife, Sara Hammond, be appointed personal representative. In his brief, petitioner argues that Sara's testimony at that hearing is properly before us as support for his contentions on appeal. Because we are remanding this case to the trial court, we need not address that argument.

"We do that by looking first to the language of the instrument itself and considering its text in the context of the document as a whole. If the text's meaning is unambiguous, the analysis ends, and we interpret the provision's meaning as a matter of law. If a provision is ambiguous—that is, if it has no definite meaning or is capable of more than one reasonable interpretation—we will examine relevant surrounding circumstances or extrinsic evidence of the contracting parties' intent. Finally, if an ambiguity remains, we may resolve the contract's meaning by resort to applicable maxims of construction."

196 Or App at 116 (citations omitted).

Thus, our first task is to examine the text of the 1985 deed to determine whether it created a tenancy in common in a life estate, with cross-contingent remainders, as the trial court held. On its face, the deed does not unambiguously create those concurrent interests in the property. The deed's text does not refer to *any* type of interest held commonly by Acy and respondent, much less a common interest in a life estate, and the obscure phrase purporting to deed the property to respondent "as a survivor" does not unambiguously create cross-contingent remainders.

We agree with the trial court, however, that we also must consider ORS 93.180, which defines "tenancies in common" (at least for statutory purposes) and specifies how that kind of estate in land may be created. *Stevens v. Theurer*, 213 Or App 49, 53, 159 P3d 1224 (2007). When the deed was executed in 1985, ORS 93.180 provided:

"Every conveyance or devise of lands, or interest therein, made to two or more persons, other than to a husband and wife, as such, or to executors or trustees, as such, creates a tenancy in common unless it is in some manner clearly and expressly declared in the conveyance or devise that the grantees or devisees take the lands with right of survivorship. *Such a declaration of a right to survivorship shall create a tenancy in common in the life estate with cross-contingent remainders in the fee simple.* Joint tenancy is abolished and the use in a conveyance or devise of the words 'joint tenants' or similar words without any other indication of an intent to create a right of survivorship shall create a tenancy in common."

ORS 93.180 (1985) (emphasis added). The trial court held that the phrase "as a survivor" in the deed "qualifie[d]" under the statute "to create a tenancy in common in the life estate with cross-contingent remainders in the fee simple."[5] We disagree.

As pertinent here, ORS 93.180 (1985) provided that a tenancy in common could be created only through a "single 'conveyance or devise' to 'two or more persons.' " *Stevens*, 213 Or App at 53. Similarly, the statute provided that any associated "right of survivorship" or "cross-contingent remainders in the fee simple" could be created only when a single conveyance—"*the* conveyance"—gave two or more "grantees" a tenancy in common in a life estate and declared the grantees' survivorship rights. ORS 93.180 (1985) (emphasis added).

The 1985 deed did not comply with those statutory requirements. On its face, the deed did not purport to convey the property to "two or more persons" (Acy and respondent) but stated simply that Acy conveyed the property to respondent "as a survivor." Nor did the deed describe survivorship rights in more than one grantee. Accordingly, the trial court erred when it ruled that the deed, in conjunction with the statute, made Acy and respondent tenants in common in a

---

[5] 2007 amendments to ORS 93.180 divided the statute into subsections. Or Laws 2007, ch 64, § 1. That statute now provides, in part:

"(1) A conveyance or devise of real property, or an interest in real property, that is made to two or more persons:

"(a) Creates a tenancy in common unless the conveyance or devise clearly and expressly declares that the grantees or devisees take the real property with right of survivorship.

"* * * * *

"(2) *A declaration of a right to survivorship creates a tenancy in common in the life estate with cross-contingent remainders in the fee simple.*"

(Emphasis added.)

Respondent relied on that amended version of ORS 93.180 in his briefing to the trial court, and the trial court's decision apparently is based on the amended statute, as the court's letter opinion refers to subsection (2), which did not exist in that separately numbered form before 2007. However, the 2007 amendments do not apply to the 1985 deed in this case; they apply only to conveyances or devises made after the effective date of the 2007 legislation. Or Laws 2007, ch 64, § 2.

life estate, each holding a cross-contingent remainder in the fee simple.[6]

We also conclude that the 1985 deed did not unambiguously effect any other type of conveyance, independent of ORS 93.180 (1985). Rather, Acy's use of the language "as a survivor" renders the deed ambiguous, subject to several possible interpretations. Petitioner advocates for one interpretation, arguing that the term "survivor" demonstrates that Acy attempted to use the deed as a substitute for a will, so that respondent would obtain an interest in the property only upon her death. Petitioner points out that such "transfer on death" deeds were not recognized in Oregon until very recently and he concludes that, because Acy tried in 1985 to accomplish something the law did not then allow, the deed is void.[7] Another possibility, however, is that Acy meant to convey the property to respondent as an *inter vivos* gift, giving respondent a then-*present* interest in the property, but postponing his right of enjoyment until after her death. Oregon law recognizes that kind of *inter vivos* gift with a delayed right of enjoyment. *See, e.g., Nalley v. First Nat. Bank, Medford*, 135 Or 409, 416, 293 P 721 (1930) (construing deed language that "[t]he foregoing provisions of this conveyance, however, shall not go into effect or be in force until after my death" not to be testamentary in nature, but to constitute a reservation of a life estate in the grantor of a present *inter vivos* gift to the grantees). We cannot tell from the deed's text whether Acy intended the deed to operate as a sort of "transfer on death" deed, as an *inter vivos* gift with a delayed right of enjoyment, or in some other manner.[8] Consequently, we conclude that the deed is ambiguous as a matter of law.

---

[6] As noted, the trial court relied on the 2007 version of the statute instead of on the 1985 version. We express no opinion regarding whether the result would differ if the amended statute applied.

[7] The 2011 legislature enacted the Uniform Real Property Transfer on Death Act. Or Laws 2011, ch 212, § 1. Under the Act, a "transfer on death deed" is defined as "a deed that conveys property to a designated beneficiary at the transferor's death." *Id.* § 2(6). Transfer on death deeds are revocable. *Id.* § 6. Moreover, during the transferor's life, a transfer on death deed does not create any interest in the designated beneficiary's favor and also does not affect the transferor's interest in the property. *Id.* § 12(1), (5).

[8] For example, petitioner argues in the alternative that Acy intended the 1985 deed to pass the property to respondent as trustee, and that this court should therefore impose a resulting trust.

When a deed is ambiguous, a court may look to extrinsic evidence to determine the parties' intent, just as it may when interpreting other types of contracts. *Cassidy*, 227 Or App at 264; *RealVest*, 196 Or App at 116. Determining the meaning of that extrinsic evidence is, however, a factual inquiry to be performed by the factfinder in the first instance. *See Patterson and Kanaga*, 206 Or App 341, 349-50, 136 P3d 1177 (2006) (remanding dissolution case to trial court to consider extrinsic evidence of parties' intent regarding ambiguous separation agreement). Because the trial court concluded that the deed unambiguously created a tenancy in common with cross-contingent remainders under ORS 93.180(2) (2007), it did not make factual findings or otherwise address the deed's ambiguity. We therefore remand this case so the trial court may consider whether available extrinsic evidence resolves Acy's intent in drafting the deed. *See Central Oregon Independent Health Serv. v. OMAP*, 211 Or App 520, 532, 156 P3d 97, *rev den*, 343 Or 159 (2007) (declining to determine the meaning of ambiguous contracts where the trial court, having determined that the contracts were unambiguous, had not addressed extrinsic evidence).

Finally, we briefly address respondent's contention that petitioner's declaratory-judgment claim is barred by the doctrine of laches because (1) petitioner first challenged the deed's validity 24 years after it was recorded and more than seven years after Acy died, (2) petitioner was on notice, "long before" Acy's death, that respondent claimed title under the deed, and (3) respondent suffered considerable prejudice from the delay, given that Acy no longer is available to explain her intent in drafting the deed. The laches doctrine bars a party from asserting an equitable claim when the party had "knowledge of relevant facts under which it could have acted earlier" and the party's delay substantially prejudiced the opposing party. *Myers v. Weems*, 128 Or App 444, 446, 876 P2d 861, *rev den*, 320 Or 271 (1994). The laches inquiry depends on the facts and circumstances of each case and "will not be 'applied mechanically to every situation' merely because a party has acted with neglect." *Hilterbrand v. Carter*, 175 Or App 335, 343, 27 P3d 1086 (2001) (citation omitted).

Because the trial court held that the deed unambiguously conveyed the property to respondent, it did not

address whether the laches doctrine otherwise would bar petitioner's claim. That fact-dependent inquiry, like consideration of extrinsic evidence regarding Acy's intent in drafting the 1985 deed, is for the trial court to conduct in the first instance. On remand, the trial court will be in the best position to determine which of those two issues to address first, and whether resolution of either question will negate the court's need to resolve the other.

Reversed and remanded.