Argued and submitted March 16, affirmed June 28, 2023

In the Matter of the Estate of
Nettie Schoolcraft, Deceased.
Maycie WILLIAMSON,
*Appellant,*

*v.*

Eddie ZIELINSKI,
*Respondent.*

Lane County Circuit Court
21PB02226; A177895

532 P3d 1257

This probate proceeding involves competing claims to the estate of Nettie Schoolcraft. Maycie Williamson, decedent's granddaughter, appeals from the trial court's judgment admitting a will executed by decedent in 2020. In her first assignment of error, Williamson challenges decedent's testamentary capacity, arguing that the trial court erred in finding that decedent knew the nature and extent of her property. In her second to fifth assignments of error, Williamson raises several challenges related to the court's determination that Eddie Zielinski, decedent's son, did not exert undue influence over decedent in the procurement or execution of the 2020 will. *Held*: The Court of Appeals concluded that the trial court did not err in determining that decedent had testamentary capacity and that the 2020 will was not a product of undue influence by Zielinski.

Affirmed.

Lauren S. Holland, Judge.

Philip M. Wasley argued the cause for appellant. Also on the briefs was Wasley Law Office, P.C.

Robert Cole Tozer argued the cause and filed the briefs for respondent.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

## JOYCE, J.

This probate proceeding involves competing claims to the estate of Nettie Schoolcraft. In March 2021, Maycie Williamson, decedent's granddaughter, filed a petition for the probate of a will executed by decedent in 2018. Eddie Zielinski, decedent's son, petitioned the court to admit a will executed by decedent in 2020. Williamson filed an objection, alleging that (1) decedent lacked the testamentary capacity to execute the 2020 will and (2) that the will was a product of undue influence. The trial court found that Zielinski met his "burden of production and proof as to the testamentary capacity of the decedent and that there was no undue influence with regard to the September 1, 2020 Will." The court admitted the 2020 will into probate.

Williamson appeals. In her first assignment of error, Williamson challenges decedent's testamentary capacity, arguing that the trial court erred in finding decedent knew the nature and extent of her property. In her second through fifth assignments of error, Williamson raises several challenges related to the court's determination that Zielinski did not exert undue influence over decedent in the procurement or execution of the 2020 will.

Under ORS 19.415(3), unless we exercise our discretion to review the matter *de novo*, we are bound by the trial court's findings of historical fact that are supported by any evidence in the record; we review the court's dispositional conclusions for errors of law. *Hammond v. Hammond*, 246 Or App 775, 777, 268 P3d 691 (2011). In this case, we decline to exercise our discretion to engage in *de novo* review, ORAP 5.40(8)(c), and affirm.

## TESTAMENTARY ABILITY

Williamson argues that the trial court erred in finding that decedent had testamentary capacity when she executed the 2020 will, because, in Williamson's view, decedent had insufficient knowledge about the nature and extent of her property. *See Kastner v. Husband*, 231 Or 133, 136, 372 P2d 520 (1962) (to have testamentary capacity, the testator must, at time of making the will, know the nature and extent of the property which makes up the estate).

The burden of proof to establish that a testator had testamentary capacity is upon the proponent of the will, Zielinski in this case. *Clauder v. Morser*, 204 Or 378, 386, 282 P2d 352 (1955). However, when a will is executed in due form, as in this case, Zielinski is entitled to the benefit of a presumption that the testator is competent. *Id.* After reviewing the record, we conclude that the trial court did not err in determining that Williamson failed to rebut the presumption of decedent's competency.

The trial court found that both attesting witnesses, attorney Thomas Hoyt and Jeannie Salyer (Hoyt's executive assistant who processed the will), testified credibly that decedent was competent at the time of execution of the will. *See Covic v. Roso*, 24 Or App 629, 634, 546 P2d 773, *rev den* (1976) (giving great weight to the attesting witnesses in determining the testamentary ability of the testator).

In contrast, the primary evidentiary support that Williamson provides to overcome the presumption of competency is that the parties stipulated to the fact that the full amount of the net sale proceeds of decedent's real properties "were deposited into [decedent's] Oregon Community Credit Union accounts" at or near to the time of the sales. In Williamson's view, that stipulation proves that decedent's belief that Williamson had misappropriated her money was false and, concomitantly, reflect that decedent did not understand the nature and extent of her property. But the stipulation that the sale proceeds were *deposited* into decedent's bank accounts by no means excludes a possibility that Williamson could have later misappropriated some of the funds for her own benefit. Moreover, regardless of whether Williamson spent decedent's money for her own personal benefit, evidence in the record supports the trial court's finding that decedent knew the nature and extent of her properties: She knew that her real properties had been sold by Williamson, and that at the time of making the 2020 will, decedent had been receiving bank statements from her credit union accounts and was aware of the total amount of money she had left in the bank. The trial court thus did not err as to decedent's testamentary capacity.

## UNDUE INFLUENCE

Williamson also argues that the trial court erred in concluding that the 2020 will was not a product of undue influence by Zielinski. A will is a product of undue influence when the influencer's conduct "gained an unfair advantage by devices which reasonable [people] regard as improper." *Harris v. Jourdan*, 218 Or App 470, 491, 180 P3d 119, *rev den*, 344 Or 558 (2008) (quotation marks omitted). A contestant of a will—here, Williamson—bears the burden to establish the existence of "a suspicion of undue influence," meaning that (1) a "confidential relationship" exists between the testator and the beneficiary, "such that the beneficiary held a position of dominance over the testator"; and (2) there are "suspicious circumstances surrounding the procurement or execution of the will." *Knutsen v. Krippendorf*, 124 Or App 299, 308, 862 P2d 509 (1993), *rev den*, 318 Or 381 (1994). When the contestant of a will establishes that a confidential relationship existed and is coupled with suspicious circumstances, an inference of undue influence arises; in such a case, the burden shifts to the beneficiary to produce evidence to overcome that inference of undue influence. *Id.* at 308-09; *see also Ramsey v. Taylor*, 166 Or App 241, 262, 999 P2d 1178, *rev den*, 331 Or 244 (2000) (describing the burden shifting process).

On appeal, Zielinski does not dispute the trial court's conclusion of the existence of a confidential relationship. We thus turn to the question of whether suspicious circumstances were present. *See In re Reddaway's Estate*, 214 Or 410, 421-27, 329 P2d 886 (1958) (identifying seven factors to evaluate if suspicious circumstances of undue influence are present in a will contest case). Williamson relies on three factors in support of her argument that suspicious circumstances were present.

A.    *Change in the Testator's Plan of Disposing of Her Property*

Suspicion of undue influence can be aroused by "a change in the testamentary plan that ignores the natural objects of the testator's bounty or disregards the continuity of purpose running through former testamentary dispositions." *Walker v. Roberds*, 182 Or App 121, 127, 47 P3d 911 (2002).

Decedent executed six wills during her life. As the trial court observed, of all the wills executed by her, the 2018 will "was the only [w]ill that didn't leave everything to the children and left—without explanation, left 40 percent of the estate to—of the residue of the estate to three grandchildren." In comparison, the 2020 will returned to decedent's previous disposition of her property—leaving her estate to her children (though excluding Judy Steers, Williamson's mother, as a beneficiary), which had been decedent's testamentary plan in the four wills preceding the will executed in 2018. In preparing the 2020 will, decedent expressly articulated that she did not want to include Steers as a beneficiary because she believed that Steers had already benefited from the money that Williamson had taken from her bank accounts. Under the circumstances, we agree with the trial court's conclusion that decedent's decision to disinherit Steers does not "ignore[] the natural objects of the testator's bounty or disregard[] the continuity of purpose running through former testamentary dispositions." *Walker*, 182 Or App at 127.

B.  *Testator's Susceptibility to Influence*

"The physical and mental condition of the [testator] is regarded as a factor of importance in determining whether a disposition of property was the result of undue influence." *Reddaway*, 214 Or at 426. Decedent suffered from dementia, mobility problems, had difficulties in reading, and suffered a stroke about a year before signing the 2020 will. Even assuming that those facts weigh in favor of her susceptibility to influence, Zielinski provided sufficient evidence to overcome an inference of undue influence.

Several disinterested witnesses testified at trial that decedent was of her sound mind. The trial court took particular note that Williamson herself testified that decedent was not particularly easily led and that "everything was done at the direction of [decedent]." Comparing the conditions of decedent making the will in 2018, the court found that decedent's independence and susceptibility to influence had not changed at the time of her signing the 2020 will.

Williamson nevertheless argues that decedent's disposition of her property in the 2020 will was a result of

undue influence exerted by Zielinski because he made false representations to decedent about Williamson's mishandling of the real properties' sale proceeds. However, decedent had been concerned about Williamson's potential misappropriation of her money well *before* there was any discussion of making a new will. At the request of decedent (not Zielinski) and upon investigation, attorney Richard Roseta found numbers of bank transactions and expenditures made by Williamson that decedent had not authorized. Roseta believed that Williamson had misappropriated decedent's funds, and he had discussed his findings with decedent in a private meeting between himself and decedent. After that discussion, decedent approached him about a new will. We thus agree with the trial court's determination that Zielinski did not exert undue influence over decedent about the extent to which she understood how Williamson handled her money.

### C.  *Independent Advice*

Lastly, Williamson argues that the trial court erred in finding decedent had independent advice. When a beneficiary is in a confidential relationship with a testator, the beneficiary has a duty "to see that the testator receives independent and disinterested advice." *Reddaway*, 214 Or at 422 (quotation marks omitted). Here, as the trial court found, decedent received independent and disinterested advice. Both attorneys Hoyt and Roseta had no prior relationship with Zielinski. Although there were times that Zielinski was present at attorneys' meetings with decedent, at various other times, decedent had private conversations with Roseta, and at the time of will execution, Zielinski was not present. Importantly, no evidence suggests that Zielinski spoke to or instructed Hoyt about the content of the contested will. Rather, the record shows that decedent approached Roseta to get a new will and gave specific directions to Hoyt regarding the content of the will.

Affirmed.